No. 27,509.

MARCELINE MAY THOMPSON, a Minor, by GEORGE THOMPSON, as Guardian and Next Friend, *Appellant,* v. THE ZURICH STATE BANK, *Appellee;* ETHEL B. THOMPSON et al., *Appellants.*

(260 Pac. 658.)

SYLLABUS BY THE COURT.

1. WILLS—*Construction—Creation of Active Trust.* A will examined and held to create an active trust for a limited time with respect only to the personal property and the income from the real estate, that it did not devise the real estate to anyone, and that on the death of the testator the title to the real estate passed to his heirs at law.

2. EXECUTIONS—*Property Subject to Levy.* Any interest in nonexempt real property, whether the same be legal or equitable, may be levied upon and sold under execution.

Appeal from Rooks district court; CHARLES I. SPARKS, judge. Opinion filed November 5, 1927. Affirmed.

*Roland Max Anderson,* of Beloit, for the appellants.

*O. O. Osborne,* of Stockton, *W. L. Sayers,* of Hill City, *C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: In this action plaintiff seeks to enjoin the Zurich State Bank and the sheriff from further proceeding with a sheriff's sale of certain real property, and also seeks a declaratory judgment construing the will of her grandfather. The bank's demurrer to plaintiff's petition was sustained, and plaintiff has appealed.

The facts alleged, so far as necessary to our consideration, are substantially as follows:

Descent and Distribution, 18 C. J. p. 838 n. 62. Executions, 23 C. J. pp. 334 n. 33, 341 n. 30. Wills, 40 Cyc. p. 1411 n. 9.

I. P. McCauley owned 480 acres of land in Rooks county, where we assume he made his home, and which he had stocked and equipped for farming. He executed his will September 15, 1914, by the first paragraph of which he provided for the payment of his debts, and by the ninth and tenth paragraphs he nominated four of his sons and one daughter as executors. The other provisions of the will follow:

"2d. That my real estate, consisting of the north half and the southeast quarter of section eight (8), township ten (10), range nineteen (19), Rooks county, Kansas, and any other real estate that I may own, shall be held in trust until my youngest child shall become of age, I mean by this youngest child living, or to make it plainer, all my living issue to become of age, and then the said real estate shall be divided equally between my heirs at law.

"3d. That all of my stock and other personal property shall be kept on the above place, and the residue from same and all proceeds from the said real estate and said personal property shall be used for the support and schooling of my children, as it may require, and if there be any surplus, the same is to be held as required above and be divided in the same way and at the same time as the real estate, except otherwise provided for hereafter.

"4th. That my farm shall be worked by my sons that are under age if they choose to do so and as fast as they become of age, I instruct my executors to give them a team, harness and wagon and let them start out for themselves and the place taken on by their younger brothers, who shall carry on the said farm, and all profits that shall be made over and above the support and schooling of my children, and the running expenses of the farm, shall be held by my estate and the same as the other property stated above and divided in same manner and time.

"5th. I instruct my executors shall pay my daughters twenty-five dollars per year from the time of my death (as pin money) until they are married, and on that day they will be given a cow, and the expenses of their wedding shall be paid from the estate.

"6th. That my executors shall see that the buildings and improvements on the above land shall be kept up in good repair, and that the place be not allowed to run down.

"7th. In case that any of my children or heirs shall try to break this will, or make any litigation in the courts from trouble arising over my estate, the same shall be cut out from receiving any benefits from this will, and his or hers or their share in this estate shall be divided equal between the balance of my heirs.

"8th. My executors shall have charge of the finances of my estate and shall care for and look after the same without any pay or compensation."

The testator died July 10, 1915, and his will was duly admitted to probate. His wife's death preceded his. He was survived by ten children, all of whom are now living. The youngest son will be 21 years of age May 28, 1931.

A daughter, Ethel B., married George Thompson. They borrowed money from the Zurich State Bank, both signing the note. The note was not paid. The bank sued, and on January 9, 1922, recovered a personal judgment against George and Ethel B. Thompson. An execution was issued on this judgment and levied on the undivided one-tenth interest of Ethel B. Thompson in the 480 acres of land above mentioned, and the same was sold at sheriff's sale to the bank for $2,900. The sale was confirmed and a certificate of purchase issued.

This action was brought by Marceline May Thompson, the eight-year-old daughter of Ethel B. and George Thompson, by her father as guardian and next friend. As a basis for her right to maintain the action, it is alleged that by the will the title to the land is vested in the executors, as trustees; that plaintiff's mother has no title in the land, and can have none until her youngest brother reaches his majority and the land is then divided, and in the event plaintiff's mother is not living at that date, title to an undivided one-tenth of the land would pass to plaintiff. This last contention is, of course, based on speculation, for the reason, as is commonly said, no one is an heir to the living. Plaintiff's mother may, and so far as the record discloses, likely will, live until her youngest brother reaches his majority, in which event, even under plaintiff's interpretation of the will, she becomes vested of an undivided one-tenth of the title to the land, with full power to encumber or convey it without regard to plaintiff's wish. We might affirm the ruling of the trial court on this question alone; but since the trial court may not have based its ruling solely on this point, we shall consider the other questions presented.

The principal question argued is: Did Ethel B. Thompson have an interest in the 480 acres of land which could be levied upon and sold under execution, at the time of the levy and sale in this case? And this is divided into two questions: (1) Had the title to a one-tenth interest in the land passed to her at that time, and (2) if so, could it be sold under execution? As to the first of these, it will be noted that the testator did not devise the land to anyone. It is true the executors have active duties to perform, but these duties pertain to the personal property and to the operation and maintenance of the farm. Title to the land was not specifically vested in them; they were given no express authority to sell it, and no such

authority can reasonably be implied from the will as a' whole. The will did not operate on the title to the land. As to the land, the will fixed a time when it should be divided. This means the land should be handled as a whole, as one farm, until the time for division. The division was to be made among his "heirs." Who were his heirs? The statute (R. S. 22-118) determines that question. His heirs were his ten children who survived him. The result is, each of his children became vested of the title to an undivided one-tenth interest in the land at the death of the testator.

Counsel for appellant has made an extended argument and cited many authorities in support of the view that the will created an active trust which necessarily vested the title of the land in the executors as trustees. We have examined all of these authorities from our own state, and many of those from other jurisdictions. In each case, of course, the court dealt with the instrument before it. It is not necessary to review them and point out similarities and differences.

Appellant contends that if Ethel B. Thompson had any interest or title to the real property in question, it was not of a character that could be sold on execution; that the proper procedure to subject it to her debts was by a creditor's bill. In this state, by statute (R. S. 60-3403), lands, tenements, goods and chattels, not exempt by law, may be taken on execution and sold, and by R. S. 77-201 the words "lands" includes lands, tenements and hereditaments and all rights thereto and interest therein, equitable as well as legal. It has been repeatedly held in this state that any interest in real property not exempt, whether that be legal or equitable, may be sold under execution. (*Poole v. French,* 71 Kan. 391, 80 Pac. 997; *Robertson v. Howard,* 82 Kan. 588, 109 Pac. 696; *McCartney v. Robbins,* 114 Kan. 141, 147, 217 Pac. 311.)

The judgment of the court below is affirmed.

BURCH, J., not sitting.